Wambaugh *agt.* Gates, and wife, and others.

---

WAMBAUGH, Appellant, *agt.* GATES, AND WIFE, AND OTHERS, Respondents.

### Questions discussed.

1. As to proper parties.

2. Whether *lands* aliened in good faith, by an heir at law or devisee before the commencement of a suit, for the recovery of a *debt* due from the testator or intestate, for which judgment had been recovered against the executors and execution returned unsatisfied, is *liable,* in the hands of the purchaser, for the payment of such debt ?

3. Whether a creditor of a testator must not first exhaust all his remedy against the personal estate of the decedent, or show that there is no personal property, before he can file a bill to enforce an equitable lien upon the interest of legatees in lands whose legacies are charged thereon ?

The facts of the case, as they appeared from the pleadings and proofs, were as follows: Jonathan Boyer died in January, 1828, seized of a valuable farm at Big Flats, in Chemung county, and of other real property in this state and in the state of Pennsylvania, and of a considerable personal property. By his will, he devised to his son, Philip Boyer, a lot of land containing fifty acres, depending upon the life of P. Michael, provided the devisee should pay to his sister Betsey a legacy of five hundred dollars within one year, and a horse, saddle, and bridle, and a

cow and six sheep.   And he devised to his son, Samuel Boyer, his homestead farm, of about one hundred and twenty acres, being the residue of his real estate at Big Flats, and directed such devisee to pay to each of his other four daughters, Polly, Susannah, Mary, and Catharine, a legacy of five hundred dollars, payable when they should respectively arrive at the age of twenty-one.   The testator bequeathed to his son John a legacy of two hundred dollars, to be paid by his executors after deducting therefrom the amount of John's indebtedness.   And he devised to the lawful heirs of his son John the farm in Pennsylvania, whereon his said son then lived, and charged those devisees with the payment of a legacy of three hundred dollars to his grand-daughter, E. Fritchley.   The residue of his personal estate the testator directed his executors to sell, and apply the proceeds thereof to the payment of his debts.   And he appointed his sons Philip and Samuel his executors, who made out probate of the will and took out letters testamentary thereon, on the 4th of February, 1828.   The principal, if not the only debts which the testator was liable for at the time of his death, was a note of about nine hundred dollars, given by him to W. Wambaugh, the complainant in this suit, as the principal debtor, or as surety for his son Philip, and a bond of about three hundred dollars to C. Winans, which A. Bennett had signed with him, as his surety, and which after his death such surety was compelled to pay.

On the 20th of January, 1830, Samuel Boyer sold and conveyed the farm devised to him at Big Flats to his brother Philip, for the consideration of three thousand eight hundred dollars, with warranty; which conveyance was duly recorded on the 23d of the same month.   And on the 15th of August, 1832, Philip Boyer conveyed the same farm to S. Poultney and W. M. Ellicott, together with all his other lands in that county, which last-mentioned conveyance was recorded in December, 1832.   In 1833, Wambaugh brought a suit against the executors, upon the note of their testator, in the supreme court; and in November of that year he obtained a judgment against them as such executors, in the usual form, for one thousand four hundred fifty-nine dollars and sixteen cents damages, and forty-one

Wambaugh *agt.* Gates, and wife, and others.

dollars and twenty-two cents costs, to be levied of the goods and chattels of the testator in their hands, if sufficient; and if not, then the costs to be levied of the proper goods of the executors.

An execution was afterward issued upon this judgment, under which the sheriff advertised and sold the farm devised by the testator to S. Boyer, and other lands in which the defendants in that suit were supposed to have an interest, under the will of the testator; and the said farm and other lands were purchased by Wambaugh, for the price or sum of one thousand nine hundred and thirty-seven dollars, and the surplus proceeds of such sale were applied to the payment of Bennett's debt, with the consent of S. Boyer. The sheriff executed a deed to Wambaugh, as the purchaser at such sale, the 25th of October, 1837.

Catharine, one of the daughters of the testator, married A. H. Gates; Mary married S. Beard; Susannah married G. Van Derin, who subsequently died; and Polly married John Barnes, and died in 1834, leaving her husband surviving. In August, 1835, Gates and wife, Beard and wife, and Mrs. Van Derin commenced a suit in chancery, before the vice chancellor of the sixth circuit, against S. Boyer, P. Boyer, S. Poultney, W. M. Ellicott, E. Poultney, and W. Wambaugh, for the purpose of obtaining satisfaction of their legacies out of the lands devised to S. Boyer. P. Boyer afterward died, and the suit was revived against his heirs-at-law. The subpœna in that suit was personally served upon S. Boyer and W. Wambaugh; but the other defendants being non-residents of the state, the bill was taken as confessed against them, as absentees. W. Wambaugh appeared and answered the bill in that suit, and the bill was taken as confessed against S. Boyer, for want of appearance. The cause was heard upon pleadings and upon the master's report, as to the rights of the absentees and the infant children of P. Boyer; and on the 21st of September, 1838, the vice chancellor made a decree, dismissing the bill as to the defendant W. Wambaugh, without prejudice, and declaring that the legacies to the testator's daughters, who were complainants in that suit, were due, and were an equitable charge upon the lands devised to S. Boyer, in whose hands soever the said lands might be,

Wambaugh *agt.* Gates, and wife, and others.

claiming under him; and that S. Boyer was also personally liable for the payment thereof. The decree also directed a sale of the lands so devised to S. Boyer, by one of the masters of the court of chancery; and that such master, out of the proceeds of the sale, pay to the complainants' solicitor his costs and a reasonable counsel fee, and the fees of the master, and to the guardian *ad litem* of the infant defendants his costs. And that such master pay the amount due to the respective complainants for their legacies, with interest; and that he should bring the residue of the proceeds of the sale into court, to abide the further order of the court. The decree also gave to the complainants the right to elect to proceed by execution against S. Boyer personally, to the amount of their respective legacies and costs. It also provided for the protection of the supposed rights of the infant children of Mrs. Barnes, by directing that the amount of the legacy given to their mother, with interest, should be paid to them out of the proceeds of the sale of the premises, if they should come in and claim the same upon the foot of that decree.

In December, 1838, W. Wambaugh filed his bill in this cause against the complainants in the suit in which such decree was made, and against S. Boyer, setting forth the several matters above stated in substance, except as to the conveyance of the devised premises by S. Boyer to his brother Philip, and by the latter to Poultney and Ellicott.

The bill also charged that S. Boyer and P. Boyer, after being advised that the complainant's proceeding to sell under his judgment was irregular, suffered him to proceed in ignorance of his rights, and to expend moneys for the benefit of the estate of their testator, with the intention that he should be deceived and defrauded. The complainant therefore prayed that the complainants in the former suit might be restrained by a decree of the court from proceeding to a sale of the farm devised to S. Boyer, under and by virtue of the decree of such former suit, and be directed to relinquish all claim to the land, and to give complainant's title thereto; or that they and their confederates might be decreed to pay him the amount of his judgment, with interest and costs, and the surplus moneys on his bid upon the

sale, which had been paid to Bennett for the benefit of the estate, and that the amount of his claims might be decreed to be a lien upon the premises, prior to the claim of the legatees under their decree, and to be first paid out of the proceeds of the sale of the premises; or for such other or further relief as might be proper under the circumstances of the case.

The defendants in this suit put in their joint and several answer to the complainant's bill, by which they admitted that in 1819 the complainant loaned to the testator seven hundred dollars, for which the testator gave his note, which note was also signed by his sons Samuel and Philip as his sureties, payable on demand, with interest; but they stated upon information and belief, except S. Boyer, who answered upon his own knowledge, that Philip Boyer afterward assumed the payment of that note by an arrangement with his father, and that a new note was afterward, in 1822 or 1823, given by Philip Boyer to the complainant, for the amount of such original note and another demand against Philip, in which the testator joined as surety for his son. And the defendants state, upon information and belief, that both notes signed by the testator were joint notes, and were not joint and several.

The defendant S. Boyer also stated in his answer that the payment made by him upon the note as stated in the complainant's bill, in the year 1831 or 1832, was not paid by him as executor, but was paid out of his own private funds, although it was endorsed upon the note as a payment by him as executor, at the special request of the complainant. The defendants therefore insisted in their answer, that the cause of action upon the note of the testator was barred by the statute of limitations.

They also stated in their answer the conveyance by S. Boyer of the premises devised to him, to P. Boyer, and the conveyance thereof by the latter to Poultney and Ellicott.

The answer further stated that the suit against the executors was commenced by collusion with, and at the request of P. Boyer, for the purpose of having the devised property sold under a judgment to be recovered thereon, to coerce a settlement with Poultney and Ellicott; in other words, to defraud them. And that the complainant purchased at the sheriff's sale, with

full knowledge of all the facts, and of the previous conveyance of the premises, and for the purpose of coercing Poultney and Ellicott to make a compromise with P. Boyer.

The defendants also charged in their answer, that the judgment in the suit against the executors was suffered to be taken by default, for the same collusive purpose, and that said judgment was of no force and validity, as against the legatees of the testator, and that the complainant's claim was barred by the statute of limitations.

The answer also stated that John Boyer, one of the devisees of the testator, was dead, and that he left several children, who were still living. Most of the other facts stated in the bill were admitted by the answer. But the defendants, in their answer, insisted that the legatees were improperly joined with S. Boyer in the suit; and if S. Boyer was a proper party, then that the heirs and the grantees of P. Boyer were also necessary and proper parties. And they further insisted, that the other devisees and legatees of the testator, or their legal representatives, were necessary parties, and were bound to contribute to the payment of the complainant's debt, if he had any.

They also insisted that by the sale and conveyance of the devised premises by S. Boyer, before the commencement of this suit, the complainant had lost the right to seek satisfaction of his demand by a sale of the devised estate for that purpose.

The cause was heard upon pleadings and proofs. The vice chancellor decided, that before the legatees could recover their legacies out of the devised property the debts of the testator must be paid ; that, by the recovery of a judgment against the executors, the complainant established his claim against the estate, and was legally entitled to payment out of the personal estate, if there was any, and if not, then from the real estate ; and that he was also entitled as against the real estate to the amount he paid Bennett, out of the proceeds of the sale of the devised estate upon execution. He therefore directed a reference to a master, to compute the amount due upon the judgment, and for the payment to Bennett with interest, and the several legacies due under the former decree, and that the master proceed to sell under the former decree the premises devised to S. Boyer,

and that he pay out of the proceeds of such sale the costs and expenses of the former suit, as directed by that decree, with interest on such costs and expenses, and the costs of the defendants' solicitor in this suit; that he then pay to the complainant in this suit the amount of his judgment, with interest and costs, the amount paid to Bennett, with interest thereon, and his costs in this suit to be taxed; and that he then pay out of the proceeds of the sale the legacies decreed to be paid in the former suit.

The defendants appealed to the chancellor, who made a decree as follows: The decree of the vice chancellor is clearly erroneous,—it must be reversed. The bill, as to the appellants, except Samuel Boyer, must be dismissed with costs, but without prejudice to their rights in any future litigation. But as to the defendant, Samuel Boyer, the surviving executor, I think there is sufficient in the pleadings and proofs to entitle the complainant to a decree against him, for relief. It is very evident that the sale of the devised premises, upon the execution against the executors, and the bidding in of the property, for the amount beyond what was due upon the judgment, when neither of the defendants in the judgment had any estate or interest therein, either in their own rights, or otherwise, was founded in a mistake. It is true, the judgment against the defendants was personal, so far as the costs of the suit were concerned. And if the title to the devised premises had been in either of the defendants, in such judgment, at the time of the docketing thereof, I am not prepared to say that the purchaser would not have obtained the legal title, under that sale. But the answer and the proofs in this cause show, that the whole of the devised property had been transferred to Poultney and Ellicott, previous to the recovery of the judgment. The complainant, therefore, if he desires it, is entitled to a decree, setting aside the sale of the devised premises upon the execution, and the deed executed by the sheriff, and declaring the judgment in full force as against S. Boyer, as the surviving executor, notwithstanding such sale; and referring it to a master to take an account of the personal estate of the testator, which came to the hands of the executors, or which they might have received and applied to the payment of the complainant's debt

by due diligence, and charging him with interest on the value of such real estate after the expiration of eighteen months from the death of the testator, to the end, that upon the coming in of the report of the master, such a decree may be made against S. Boyer, for the satisfaction of the debts due to the complainant, as may be just, and reserving the question of costs between those parties, and all other questions and directions as to them or their rights, in the mean time.

The proceedings to be remitted to the vice chancellor. *Reported* 11 *Paige*, 505.

From this decree, Wambaugh, the complainant, appealed to this court.

*Ziba A. Leland, Attorney and Counsel, and*
*B. Davis Noxon, Counsel* for appellant.

*First.* As the first suit before the vice chancellor was dismissed, as to the appellant, without prejudice, he stands in this suit at least in as good a situation, as to his rights, as he would in the first suit properly presenting all his rights.

*Second.* The legacies given to three of the respondents, by the will of Jonathan Boyer, were not made by that will either an equitable or legal charge upon the premises in question. (*Lupton* v. *Lupton*, 2 *John. Ch. Rep.*, 614–623, 624; *David* v. *Gardner*, 2 *Pr. Wills*, 187; *Keeling* v. *Brown*, 5 *Ves.* 359–62; *Knightly* v. *Knightly*, 2 *Ves.* 328, 330–1, *and note to Bost. ed.;* 7 *Paige*, 427.)

☞ Where take under *residuary clause*, different—No case where bare direction to pay creates a charge. Executors never filed an inventory. ☜

*Third.* The bill in the first suit was not properly framed to reach the lands by an equitable charge or lien. For that purpose the bill should have averred that the personal estate was exhausted, and the same should have been supported by proofs. (*Lupton* v. *Lupton*; *Livingston* v. *Newkirk*, 3 *John. Ch. Rep.* 319; *Tole* v. *Hardey*, 6 *Cow.* 334, 340; *Watson* v. *Brickwood*, 9 *Ves.* 447–8, 453; *Powell on Devises, ch.* 35, 682; 22 *Law Lib.* 364; *Story Eq. Pl.* § 104, *n.* 1, §§ 105, 106; 2 *Paige,* 19; *Smith* v. *Smith*, 4 *Paige*, 271.)

*Fourth.* The debts of Jonathan Boyer were made a charge upon all of his real estate, as well as personal, by his will—and a charge prior to legacies. (*Williams* v. *Chitty*, 3 *Ves.* 551; *Knightly* v. *Knightly*, 2 *id.* 328–30, *and note to Boston ed.; Shallcrass* v. *Finden*, 3 *id.* 738; *Harris* v. *Ingledew*, 3 *Pr. Wills.* 91; *Story Eq. Juris.* §§ 1244–1247 *a, and notes Bost. ed.;* 1 *Ves.* 436; 2 *id.* 330.)

*Fifth.* By the statute law of the state, the debts of deceased persons are made a charge upon all of their estates, both real and personal—and a charge prior to the legacies. (2 *R. S.* 2d *ed.* 28–47; *notes a to* 1, *Ves.* 436, *Bost. ed.;* 3 *and* 4 *William IV., ch.* 104; *Story Eq. Pl.* § 163, *note* 3, 1; *Potter* v. *Gardner*, 12 *Wheat.* 501; *Wilkinson* v. *Leland*, 2 *Peters*, 658–9; *Story Eq. Juris.* § 1216, *a, b, c*, 1217; *Powell on Devises, ch.* 35, 664; 22 *Law Lib.* 355.)

*Sixth.* The sheriff's sale and deed made a good title in the appellant at law as against all of the respondents. (*Exr. of Lansing* v. *Lansing*, 18 *Johns. Rep.* 502; 2 *R. S.* 2d *ed.* 365, § 6; *Id.* 30, § 41; *Id.* 29, § 32; *Butler* v. *Hemstead*, 18 *Wendell*, 666.)

*Seventh.* The sale and deed made a good title in appellant in equity as against all of the respondents.

1. The sale was made virtually by S. Boyer, as well as by the sheriff. (*Storms* v. *Barker*, 6 *John. Ch. Rep.* 166–8.)

2. S. Boyer had power to sell the lands devised to him to pay debts and legacies. (*Potter* v. *Gardner*, 12 *Wheat.* 498, 502; 7 *Paige*, 427.)

3. The avails were applied to pay the debts of a prior lien, and purchased in good faith and for a valuable consideration. *Walwyn* v. *Lee*, 9 *Ves.* 24, 31; *Jackson* v. *Chamberlain*, 8 *Wend.* 620; 1 *Paige*, 135; *Parks* v. *Jackson*, 11 *Wend.* 447; 1 *R. S.* 740, § 3; *Story Eq. Juris.* §§ 410–419; *Story Eq. Pl.* § 604, *a;* 2 *Peters*, 656, &c.)

*Eighth.* The appellant having in good faith purchased the legal title of the person in possession, he can tack to that his equitable claim, and hold under both.

*Ninth.* At all events, the first suit should have been brought to redeem on paying appellant's claims or prior equities, and

the bill should have set forth all the facts constituting the appellant's rights, the offer of legatees to pay appellant's claims, and have averred their willingness to pay at time of commencement of suit. For this purpose, that bill was totally defective. (*Buckman* v. *Frost*, 18 *John. Rep.* 560, 570–1; *Story Eq. Pl.* § 257; 1 *Paige*, 131, 135.)

*Tenth.* The respondents have no reason to complain of the decree of the vice chancellor; it was as favorable to them, if not more so, than equity required, and the decree of the chancellor reversing the same should be reversed. (*Foster* v. *Wilber*, 1 *Paige*, 537–41; *Laws of* 1837, 524, § 4; 2 *R. S.* 32, § 52; *Id.* 26, § 17; *Id.* 31, § 45; 18 *Wend.* 666; *Northrup* v. *Hill*, 1st *Cas. in Ch.* 136; *Anon.* 1, *Vern.* 162; *Galing* v. *Dorner*, *id.* 482; *Note in Ch. Cas.* 136–8; *Hardwicke* v. *Mynde*, 1 *Aust.* 112; *Walker* v. *Meager*, 2 *Pr. Wills*, 550–2; *Kidney* v. *Caussmaker*, 12 *Ves.* 154; *Graves* v. *Powell*, 2 *Vern.* 248; 2 *John. Ch. Rep.* 626–7; *Story Eq. Juris.* § 92; 2 *R. S.* 31, § 42.)

*Eleventh.* If the personalty is wasted by the executors, still the creditor has the prior lien upon the realty, over the legatees claiming a charge.

*Twelfth.* At the time the bill was filed, the premises in question might have been sold by an order of the surrogate, to pay appellant's judgment and the Bennett debt, had not circumstances intervened making it necessary to file a bill in chancery, to wit: the sale and deed by the sheriff. The fact that the executors had not filed an inventory, and the existence of the first suit by the legatees, a resort to a court of chancery became necessary to do what the surrogate could otherwise have done; and the decree should be as ample. (1 *R. L.* 450, § 23; *Jackson* v. *Robinson*, 4 *Wend.* 437–42; 2 *R. S.* 39, § 1; *Laws of* 1837, 536, § 72.)

*Thirteenth.* The bill was properly framed to meet the decree made by the vice chancellor to obtain a fund in the power of the court. (*Story Eq. Pl.* § 208; *Gellispie* v. *Alexander*, 3 *Russ.* 130; *Greig* v. *Summerville*, *Russ. & Mylne*, 338; *David* v. *Fraud*, *Mylne & Keene*, 200; *Story Eq. Pl.* 106.)

*Fourteenth.* It is not in the power of the respondents to ob-

Wambaugh *agt.* Gates and wife, and others.

ject that the testator's personalty was not exhausted, for they should have seen to that in the first suit, and the surviving executor cannot be called upon a second time to account for the personal estate.

*Fifteenth.* Sufficient appears from the pleadings and proofs to show at least prima facie that there was a deficiency of personalty to pay debts. (*Story Eq. Juris.* § 1216, *b, c ; Story Eq. Pl.* § 257, *a.*)

*Sixteenth.* The bill was properly framed as to parties. (*Story Eq. Pl.* §§ 104, 106, 164, 203, 205, 207 *a*, 208 ; *Pritchard* v. *Hicks*, 1 *Paige*, 270, 273 ; 3 *John. Ch. Rep.* 556 ; *Story Eq. Pl.* §§ 140, 141, 148 ; *Ed. on Parties*, 172, *art.* 83 ; *Id.* 139, *art.* 88 ; 2 *Pr. Wills*, 550 ; *Story Eq. Pl.* § 150 *and note*; *Id.*, § 163, *notes* 3, 1 ; 12 *Wheat.* 499, 500 ; *Talfair* v. *Stead*, 2 *Cranch*, 407 ; 2 *R. S.* 40, § 6.)

1. It was not necessary to make the purchasers parties. If they have any rights, it is by title paramount, and not prejudiced by this suit. (*Story Eq. Pl.* § 230 ; *Id.*, § 272, *and note* 3.)

2. It was not averred in the answer or proven that they are *bona fide* purchasers for a good consideration and without notice. (3 *Pr. Wills*, 94 ; 12 *Wheat.* 499 ; *Gallatin* v. *Cunningham*, 8 *Cow.* 361, 374 ; 12 *Wheat.* 499.)

3. This objection of *bona fide* purchasers can only be taken by the party interested, and that should properly be by plea.

4. They abandon their rights by not setting them up in the first suit.

5. The heirs were not necessary parties, especially as the will is admitted on both sides.

6. The heirs of the co-executor were not necessary parties, for they live out of the state—have received nothing and claim nothing of the estate.

7. None of the legatees were necessary parties, except those who were prosecuting the first suit—and they were necessary parties to enjoin them from receiving the fund. (*Colvert's Parties in Eq.* 128–138.)

8. As three of the legatees were allowed to prosecute for, they are competent to defend the rights of their co-legatees.

9. There was no objection taken that Barnes or Betsey were not made parties.   (3 *John. Ch. Rep.* 429.)

10. If Barnes or Betsey were necessary parties, the fact should have been pleaded.   (*Story Eq. Pl.* 745 *and note* 2.)

11. Want of proper parties was not a good reason for reversing the decree of the vice chancellor.   (*Colt* v. *Lasner*, 9 *Cow.* 320, 329, 330, 334.)

*Seventeenth.* The chancellor, after properly ·deciding that the purchasers were not necessary parties, erred in defending their imaginary rights.

*Eighteenth.* The objection taken by way of statute of limitations is not tenable.

1. The point raised is, whether the cause of action arose within six years next before the death of the testator, and no other.   (3 *Paige*, 417–18.)

2. There is no statute bar for a case like this after death of testator.

3. The cause of action arose within ten years from the commencement of this suit.

Z. A. LELAND, SOL'R,
*and of Counsel for appellant.*

☞ *B. D. Noxon*, in reply.   If there have been mistakes in this business, or in the pleadings, we should not lose our debt and all our rights—court of chancery could give us relief—if we ought to pay costs, we must pay it—but we should not lose all.

If more parties are wanting, they may be brought in—if bill dismissed, the statute of limitations may be a bar—defendants (except Samuel) are not strictly devisees, unless so far as interested in the real estate—statute don't apply.

Concede that sale to Poultney and Ellicott cuts us off, still if these legatees have a right against the vendees for their legacies, we ought to have their remedy to the extent of the legacies—debts preferred to legacies—court of chancery might compel them to act for our benefit.   If they had gone under the decree and collected their legacies, we could call on them to pay the money in satisfaction of our debt.

Wambaugh *agt.* Gates and wife, and others.

*John A. Collier, Attorney and Counsel* for respondents.

*First.* The bill should be dismissed, for the want of proper parties.

1. The representatives of Philip Boyer, the co-executor and devisee, should have been made parties.

2. All the legatees under the will of Jonathan Boyer should have been made parties.

3. Samuel Poultney and William M. Ellicott, the grantees of Philip and Samuel Boyer, should have been made parties. (2 *Paige R.* 15, 280; *Edwards on Parties,* 1, 3, 121, 123; 2 *Bibb,* 184, 273, 276; 3 *Equity D.* 100–104; 3 *Munford,* 514; 1 *Munford,* 437; *Breese,* (*Ill.,*) *R.* 124; 4 *J. J. Marshall, R.* 232; 2 *Harr. & Gill,* 94; 4 *Harr. & John.* 333; 4 *Wash. C. C. R.* 631.)

*Second.* The legacies to the defendants and respondents, Catharine Gates, Mary Beard, and. Susannah Van Derin, were an equitable lien upon the lands devised to Samuel Boyer, in whose hands soever the same might be; and so it was adjudged by the vice chancellor, by his decree of 21st September, 1838, all the necessary parties being before the court in that original suit. (7 *Paige,* 421, 424, 425; 9 *Paige,* 534; 3 *Cow. R.* 133; 6 *Cow.* 333; 2 *P.* 23; 10 *J.* 148; 18 *J.* 41; 12 *W.* 53, 95.)

*Third.* The lands which the complainant Wambaugh sought to charge, by the bill in this cause, having been aliened before suit brought against the heirs or devisees, are not therefore chargeable with the debt. (2 *R. S.* 454, §§ 47, 49, 51, 60, 61; 2 *Paige R.* 592; 7 *Paige,* 361; 20 *Johns. R.* 414; 9 *P.* 29, 45.)

*Fourth.* The case on the part of the complainant is totally defective in not averring on the face of the bill, and proving affirmatively, that the personal estate of Jonathan Boyer was not sufficient to pay the debts, or that after due proceedings before the surrogate, and at law, complainant was not able to collect his debt out of the personal estate. (2 *R. S.* 451, § 26; 452, § 27, 33, *p.* 455, § 56; 5 *Paige R.* 254, 259; 9 *Paige,* 28, 90, 92; 3 *Johns. Ch. R.* 148; 7 *Paige R.* 421, 425; 2 *Johns. Ch. R.* 614, 628; 1 *Munford's R.* 437; 7 *J. J. Marsh.* 254.)

*Fifth.* If the complainant has any remedy against the *heirs,* or *devisees,* or *legatees,* as such, they must be made *joint* parties, and must be *jointly* chargeable. Nor could a claim against Philip Boyer and Samuel Boyer, as executors, or against Samuel Boyer individually, be properly blended in the same bill with a claim against the other defendants, in a different character. Such a bill is objectionable as multifarious, and combining causes of action which cannot properly be united in the same bill. (2 *R. S.* 454, § 42; 456, § 60; 5 *Paige R.* 254, 259, 260; *Laws of* 1837, *p.* 537, § 73; 9 *Paige,* 90; *Edwards on Parties,* 10, 130.)

*Sixth.* The complainant, if a just creditor, has a remedy only against the real or personal estate. If against the *personal,* he must look to the executors in their representative character; if against the *real,* he must seek it *in rem,* bringing all the proper parties before the court; or against the heirs and devisees alone who have aliened before suit brought. Neither of these remedies will reach Beard and wife, Gates and wife, or Mrs. Van Derin; and the bill is not framed so as to give the proper relief against Samuel Boyer, even supposing him, under any circumstances, to be liable.

*Seventh.* The judgment against Philip and Samuel Boyer as executors did not bind the real estate, nor was it in any respect evidence, or available against those not parties to it, nor was it an admission of assets even as against the executors, nor could an execution properly be issued upon it, except by order of the surrogate, or until their account, as executors, was rendered and settled. (8 *Wend. R.* 500; 2 *R. S.* 88, § 32; 18 *Wend.* 666, 668; 9 *Wend.* 448; 5 *Hill,* 131, 135.)

*Eighth.* The complainant's claim is barred by the statute of limitations; certainly so, except so far as he can avail himself of this judgment against the personal estate, to be paid in the course of administration. The devisees, as such, and certainly all the legatees, not being parties to that suit, are not bound by the judgment, and if the debt or demand " remains against the estate of the deceased, to the same extent as before, and to be established in the same manner, as if no such judgment had been recovered," which is the express provision of the act of

1837, then the legatees, whom the complainant now seeks to charge, or the devisees as such, can avail themselves of the statute of limitations, and they have set it up accordingly in their answer. (2 *R. S.* 301, § 49; 448, § 8; 24 *Wend. R.* 587. 594; 14 *Wend.* 90, 97, 98; 2 *Paige*, 574; 19 *Wend. R.* 491; 5 *Paige*, 34; *Laws of* 1837, *p.* 536, § 72; 1 *Munford*, 437; 9 *Cow.* 132; 7 *Conn.* 172, 178; 6 *J. Ch.* 373; 12 *Wheat.* 565, 567.)

*Ninth.* The legatees, if chargeable or liable at all, to any creditor of testator, are only liable to the extent of their assets when they shall have come to their hands. Yet the complainant files his bill against them, claiming his debt and costs, without either averring or proving, nor is it now pretended, that they have ever had any assets in their hands. (*See authorities cited under fourth point;* 2 *R. S.* 452, §§ 27–30.)

*Tenth.* The real estate which the complainant seeks alone to charge by the frame of the bill, not being liable, under any circumstances, for the complainant's debt, and not being liable to Mrs. Beard, Mrs. Gates, and Mrs. Van Derin, except upon the ground that their legacies were an equitable lien upon the lands, as against all who derived their title under the will, the complainant has no remedy, or cause of complaint, against those legatees. He cannot reach the land himself, by a direct bill and application to all the equitable powers of the court, with all proper parties; nor can he make *cat-paws* of the legatees to reach this property for his benefit; much less can he stand by until the legatees get, in their own right, and at their own expense, what the complainant has no legal or equitable claims to, and then take to himself the whole of the *spoils*, which he has not contributed, and could not contribute, to win.

*Eleventh.* Even if complainant were entitled to a decree against the defendants, the premises he seeks to charge, could not properly be sold by a master, but the complainant could only, after a decree, be entitled to issue execution in the common form, which would not reach the lands he seeks to charge. (2 *R. S.* 454, § 47; 5 *Paige*, 254; 7 *Paige*, 354, 361.)

*Twelfth.* By the decree of the vice chancellor, the whole of the complainant's debt against testator is charged upon that

portion of the estate which was devised to Samuel Boyer, instead of being made chargeable, as it should have been, if at all, first, upon the personal estate, and then, upon *all* the lands devised, *pro rata*. The effect of this decree is, to exhaust the whole fund, which is alone chargeable with these legacies, whereas a *pro rata* charge would, or might, have left enough to pay them. Thus : Suppose the shares of Philip, Samuel, and John (including the devise to his children) to be equal.

| | | |
|---|---:|---:|
| Samuel sold his share for, . . . . | | $3,800.00 |
| Complainant's debt, . . | $1,510.32 | |
| Bennett's debt, . . . . | 363.28 | |
| | $1,873.60 | |
| Samuel's share of this, say ⅓d, . . . | | 624.53 |
| Would leave in his hands, . . . . | | 2,175.47 |
| If he paid the three legacies of five hundred dollars chargeable upon his share, . . . . . . . | | 1,500.00 |
| It would still leave him a balance of, . | | $675.47 |

(3 *Johns. Ch. R.* 148.)

*Thirteenth.* The complainant having sold the lands upon an execution confessedly irregular, and bid three hundred and sixty-three dollars and twenty-eight cents more than the amount of his execution, which was paid over to another creditor, real or pretended, without authority, this demand, which was also barred by the statute of limitations, is made chargeable solely upon the land devised to Samuel, and at the expense, and to the exclusion, of the legatees, defendants.

*Fourteenth.* The original decree of the vice chancellor ought to be reversed, and the complainant's bill be dismissed, as to all the defendants, with costs.

JOHN A. COLLIER & SONS, <i>for respondents.</i>

JEWETT, Ch. J.   A testator's personal estate is, in equity as well as at law, the natural and first fund for the payment of his

debts, (*Booth* v. *Blundell, Merrivale's Rep.* 192; 2 *R. S.* 87,) and if such estate be insufficient, his real estate, except such as is devised expressly charged with the payment of debts, is next liable and may be leased, mortaged, or sold, by order of the surrogate having jurisdiction, on the application of his personal representatives or any of his creditors, and the proceeds applied in payment or satisfaction of such debts as remain unsatisfied and not secured by mortgage upon land executed by the ancestor or testator. (2 *R. S.* 99, § 1, 20; *Laws* 1837, *p.* 531, § 41; *p.* 536, §§ 72–74; 1 *R. S.* 749, § 4.) In case the testator's personal estate, out of which the legacies bequeathed are payable, proves insufficient for the payment of his debts, for which it is liable, and such legacies have been paid, the legatees in general are bound to refund their legacies or such rateable part thereof as will be sufficient to satisfy such unpaid debts. (6 *Bac. Abr. Ed.* 1844, *tit. Legacies, H.* 298.)

By 2 *R. S.* 451, § 26, provision is made for actions by creditors of any deceased persons to recover the value of any assets that may have been paid by an executor or administrator to any legatees of their testator, against *all* of such legatees jointly or against any single legatee separately, on the ground of a deficiency of assets to satisfy the debts of the testator.

The statute (2 *R. S.* 452, § 32) makes the heirs of every person who shall have died intestate and the heirs and devisees of any person who shall have died after the making of his last will and testament, respectively liable for the debts of such person arising by simple contract or by specialty to the extent of the *estate interest* and right in the real estate which shall have descended to them from, or been devised to them by, such person.

By the 2 *R. S.* 454, § 42, 456, § 60, all the heirs or all the devisees of the testator, when the latter are liable for his debts, are required to be sued *jointly* in a court of *equity*, but should not be liable to any suit in a *court of law*.

So far as this provision applied to heirs, was changed by the statute of 1837, (*ch.* 460, § 73,) which provided that they might be sued *jointly* and not separately in a court of *law* or *equity*, and the 42d section above referred to was repealed by § 74 of the act of 1837.

The foundation of the complainant's claim arises upon an alleged subsisting debt, due to him from J. Boyer, the testator, and according to his own showing he must make title to recover, if at all, against the defendants, as *legatees* or *devisees* of the testator. In either case it is obvious that the objection of want of parties is well taken. If the claim is against them as *legatees*, it is seen that all of the legatees are not *jointly* sued, or any single legatee separately. If the claim is against them as *devisees*, the case shows that *all* of the devisees are not made parties, which, I think, under the provisions of the statute, is fatal.

But as it was strenuously urged on the argument, that if there was no other objection, exercising a proper discretion under the circumstances, the court of chancery should have allowed the cause to stand over and proper parties to be brought in, I will proceed to see whether a case upon the merits has been stated in the bill provided proper parties were in. The relief to which the complainant supposes himself entitled, as appears by the prayer of his bill, is either, that the defendants should be decreed to desist from selling under the decree in favor of Gates and wife, Beard and wife, and Susannah Van Derin, made 22d September, 1838, the premises devised to Samuel Boyer, and quiet his title thereto under his purchase at the sheriff's sale; or that the defendants should be decreed to pay his judgment, together with interest and costs, and the surplus of the bid over and above that judgment and costs; and that such claim should be decreed to be a prior lien upon the premises devised to Samuel Boyer to the lien of Gates and wife, Beard and wife, and Susannah Van Derin; and that when a sale should be made of said premises upon that decree, the complainant's claims should be first paid. I am unable to discover any principle upon which such claim as set forth in the bill can be sustained against the defendants, Gates and wife, Beard and wife, and Van Derin. I do not see that the complainant has shown that he has acquired any title whatever to the premises, legal or equitable, under his judgment.

Conceding that his judgment was a lien upon the lands of Samuel and Philip Boyer at the time of its docket, and that is

as much, and I think more, than can be claimed for it, they did not then own or have any interest in the land in question. It is shown that Samuel conveyed to Philip these lands on the 20th day of January, 1830, and that Philip conveyed the same to Poultney and Ellicott on the 15th day of August, 1832, upon the consideration mentioned in the deeds, which are not attempted to be impeached for fraud or otherwise by the complainant; and the suit in which the judgment was rendered was not commenced until July, 1833. But it is said that it is not averred or proved that the purchasers from Samuel Boyer were *bona fide* for a good consideration and without notice.

The answer is, as against a purchase under a judgment against Samuel and Philip Boyer as executors, or as against them generally, the prior conveyance is presumed to, have been fairly made upon the consideration expressed in the conveyance, and *bona fide.* If it is claimed to be fraudulent, the burden of showing it lies with the other side.

The argument seems to have proceeded upon the ground that this judgment was recovered against Samuel and Philip Boyer as *heirs* or *devisees* of the testator, and that the land sold and purchased by the complainant under it had descended from or been devised to them by the testator. If the judgment was such, the land of the heir or devisee, descended from, or devised by the testator, would be subject to be sold; and on a sale the purchaser would acquire a valid title, although it had been previously aliened by the heir or devisee, unless such alienation had been made in *good faith* before the commencement of the suit; and the purchaser, in order to show a good title against the purchaser under such judgment, would be under the necessity of showing that the heir or devisee had so aliened it in *good faith.*

In the second place, I see no ground on which the complainant has made by his bill a valid claim against the defendants, Gates and wife, Beard and wife, and Van Derin, or either of them, to be decreed payment of his debt. Under no circumstances could he maintain his claim or any part of it as against them, unless he presented a case showing either that they are legatees and had been paid their legacies or some part thereof

out of the personal estate, and that no assets had been delivered by the executor or administrator of the deceased to his next of kin; or that the value of such assets had been recovered by some other creditor; or that such assets were not sufficient to satisfy his demand, (2 *R. S.* 452, § 27;) or that they are the heirs or devisees of Jonathan Boyer, and that some *estate inte-rest* and right in the real estate of the deceased had descended from or been devised by him to them; and that the personal assets of the deceased were not sufficient to pay and discharge his debts; or that, after due proceedings before the proper sur-rogate's court and at law, he had been unable to collect his debts or some part thereof from the personal representatives of the deceased, or from his next of kin or legatees. (2 *R. S.* 452, §§ 33, 36, 456, §§ 59, 60; *Butts* v. *Genung,* 5 *Paige R.* 254.)

The complainant has failed to show by his bill, if he claims to recover against them as legatees strictly, that the defendants, Gates and wife, Beard and wife, and Van Derin, or either of them, had ever been paid any portion of their legacies.

If he claims against them as heirs, and as such, if it be con-ceded that he has shown that some *estate interest* and *right* in the real estate descended to them from the testator, he has omit-ted to show or allege that the personal assets of the deceased were not sufficient originally to pay and discharge his debts, or that after due proceedings before the proper surrogate's court, and at law, he had been unable to collect his debt or some part thereof from the personal representatives of the deceased or from his next of kin or legatees. (2 *R. S.* 452, § 33.) Or if he claims against them as *devisees,* he has omitted to allege or show that the personal assets of the testator, and the real estate which descended to his heirs, were insufficient to discharge his debt; or that, after due proceedings before the proper surro-gate's court, and at law, he had been unable to recover such debt or some part thereof, from the personal representatives of the testator, or from his next of kin or legatees, or from his heirs.    Such allegations were necessary, without which no cause of complaint appears by the bill against them. (2 *R. S.* 452, § 33, 455, § 56; *Schermerhorn* v. *Barhydt,* 9 *Paige R.* 28.)

Wambaugh *agt.* Gates and wife, and others.

It seems to me, therefore, that in whatever character complainant claims against Gates and wife, Beard and wife, and Van Derin, whether as legatees, heirs, or devisees, conceding to them the character of one or the other, he has failed to make such allegations, without which being made and proved or admitted, he does not show a case subjecting them to the payment of his debt or any part thereof.

The bill merely states that the testator, at the time of his death, was possessed of considerable personal estate, but without alleging that it was not sufficient to pay his debts. For aught that appears by the bill, the personal estate of the testator was sufficient to have paid all his debts, if it had been applied to that purpose by his executors. The devisees of the real estate or of any interest or rights therein can not be subject to contribute any thing for the payment of debts until it is shown that the complainant has taken all proper steps to obtain satisfaction from the executors, or from the legatees of the personal estate, if it has been paid over to them leaving debts unpaid, or from the real estate, if any, descended to his heirs.

I agree with the chancellor, that the issuing of the execution upon the judgment recovered against the executors did not exhaust the remedy against them, for the personal estate which had come to their hands and had been misapplied by them. For under that execution, the sheriff could only levy the demand out of the personal property which still remained in their hands, and which was the proper subject of sale on execution. The return of such execution unsatisfied, therefore, was no evidence that there was not in fact sufficient personal assets originally, or even then, to satisfy the judgment, or that the debt or demand could not be recovered from the executors personally, if the complainant had taken the proper steps to call them to account befor the surrogate. And conceding that the interest of the legatees in the real estate, their legacies being liens thereon, could be reached in any way, they clearly can not be until the complainant has proceeded against the surviving executor personally for the satisfaction of his demand.

It was however insisted on the argument that the defendants

Wambaugh *agt.* Gates and wife, and others.

could not raise the objection that the testator's personal assets were not exhausted, on the ground that their proceedings to enforce their lien upon the real estate, to satisfy their legacies, was an admission of a deficiency of assets of the testator, and that they had been duly applied in the course of administration.

I think there are are at least two conclusive answers to such objection. One is, if the legatees had gone against the executors for payment of their legacies, conceding that the surplus of the personal assets over and above sufficient to satisfy all the debts of the testator chargeable upon them could properly be appropriated to satisfy the legacies, *non constat* that they did, and that the personal assets of the testator were claimed by the executors to be retained by them equal in amount with the complainant's debt, on the grounds of its existence and being outstanding.

The other is, the defendant's bill, in the first suit, expressly alleges that the personal assets of the testator which came to the hands of the executors were more than sufficient to pay all his debts, which fact is admitted by the complainant in his answer or stipulation in that suit.

It is not perhaps very material in the decision of this case to express an opinion as to the effect of the judgment obtained by the complainant against S. and P. Boyer, as executors of their testator. But as it was strongly urged that the complainant acquired a valid title to the premises in question upon the sale and conveyance under it, as against the defendants, it may be well enough to give an opinion upon that point.

That judgment was rendered against the defendants therein as executors for $1,459,16 damages and $41,16 for costs, to be levied of the goods and chattels which were of the testator at the time of his death in their hands to be administered, if they had so much thereof in their hands to be administered, and if they had not so much in their hands to be administered, then $41,16, parcel of the damages aforesaid, being for the costs and charges aforesaid, to be *levied* of the proper goods and chattels of said Samuel and Philip Boyer. This is in conformity to the English practice as formerly pursued in the entry of such judg-

ments, and by its terms was not a lien upon the lands, even of the defendants, for any portion of the recovery. (*Lansing* v. *Lansing*, 18 *John. R.* 502.)

If there had been a further direction, which is warranted by our statutes on a proper application to the court, to wit: " and if sufficient goods and chattels of the executors can not be found, &c., that then the said $41,16 be made of the real estate of the executors," the judgment for that amount would have been a lien upon the lands of the executors; but as it was rendered only against their goods and chattels, in my opinion it never was a lien upon any real estate.

It is evident from the whole tenor of the will, that the testator intended to charge his son Philip with the payment of the legacies bequeathed to his daughter Betsey, and his son Samuel, with the payment of the several legacies bequeathed to his four daughters Polly, Susannah, Mary, and Catharine, in case of their acceptance of the devises, in consideration of the lands so devised to them respectively in aid of the personalty. That being so, it is well settled that such real estate is in equity chargeable with the payment of those legacies. (*Harris* v. *Fly*, 7 *Paige R.* 421.) It is plain that the daughters of the testator, who have legacies bequeathed to them, to be paid by his two sons in consideration of the devise of the real estate to them and the representatives of those who are deceased, if liable at all for the payment of the complainant's debt, can only be subjected to the payment upon the ground that their legacies are interests in the real estate so devised to Philip and Samuel to the extent of the value thereof, and equitable charges upon the lands so devised. I am inclined to the opinion that such legacies are interests in such real estate, which under a proper state of facts would subject them to the payment of the debts of the testator to the extent mentioned, although the devisees charged with the payment of the legacies may have aliened *their* interests in the estate in good faith before the commencement of a suit by a creditor for the recovery of such debt. The interests of the legatees in the land would remain unaffected by such conveyance. But it is not necessary to decide that question in this case, as I think I have shown that the bill is not so framed

Wambaugh *agt.* Gates and wife, and others.

as to charge any of the daughters on the ground of having such interests.

I agree with the chancellor, that there was enough in the pleadings and proofs to entitle the complainant to the decree made against S. Boyer.   Several other questions were made on the argument ; among them the defendants insisted that the complainant's debt was barred by the statute of limitations.   Having come to the conclusion that there is no error in the decree of the chancellor, I do not deem it necessary to give an opinion upon any other question made.   The decree should be affirmed.

DECISION.—Decree affirmed, unanimous.

NOTE.—*Held*, that *personal estate* is first liable, at law and in equity, for the payment of the *debts* of a testator.   The *real* estate, in case of insufficient personal estate, is next liable, except such as is expressly charged with the payment of debts.

Where legacies are made payable and have been paid out of the personal estate, the legatees, in general, are bound to *refund* where the personal estate proves insufficient to pay the debts.

In this case the complainant, by his bill, must make title, if at all, against the defendants as *legatees* or *devisees* of the testator.   Not having *jointly* sued *all* of the *legatees*, or any single legatee separately, and not having made *all* of the *devisees* parties, under the provisions of the statute, there is a fatal defect of *parties.*

As against a purchaser under a judgment against Samuel and Philip Boyer as executors, or as against them generally, the *prior conveyance* (to Poultney and Ellicott) is presumed to have been fairly made upon the consideration expressed in it.   If it is claimed to be fraudulent, the burden of showing it is with the other side.

If the judgment had been recovered against Samuel and Philip Boyer as *heirs* or *devisees*, and the land sold under it had descended from or been devised to them by the testator, then a prior *bona fide purchaser* to the judgment would be bound to show that the heir or devisee had aliened the land in *good faith.*

If the complainant claims to recover against Gates and wife, Beard and wife, and Van Derin, as *legatees,* he has failed to show, by his bill, that either of them have ever been paid any portion of their legacies.

If he claims to recover against them as *heirs*, he has omitted to allege that the personal assets of the deceased were not sufficient originally to pay his debts, or that all the proper proceedings and remedies before the surrogate, and at law, had been instituted against the personal representatives, and exhausted.

And if he claims against them as *devisees*, he has omitted to allege or show, that the personal assets of the testator, and the real estate which descended to his heirs, were insufficient to discharge his debts, or after proceedings against the personal representatives, next of kin, legatees, or heirs-at-law, before the surrogate and at law, he had been unable to recover the debt or some part thereof.

The issuing of the execution upon the judgment recovered against the executors, and its return unsatisfied, was no evidence that there was not in fact sufficient personal assets originally, or even then, to satisfy the judgment, or that the debt or demand could not be recovered from the executors personally, if the proper steps to call them to account were instituted.

The complainant's judgment being against the defendants as executors, and the amount thereof to be levied of the goods and chattels which were of the testator at the time of his death in their hands to be administered, and if they had not so much in their hands to be administered, then the amount of costs and charges to be *levied* of the proper goods and chattels of the executors personally, it never was a *lien* upon any *real estate*.

There was enough in the pleadings and proofs to entitle the complainant to the decree made by the chancellor against S. Boyer.

*Not reported in this court.*